UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Lisa Hamilton
_____
Plaintiff

vs.

Florida Dept. Of Education.
The Division of Vocational Rehabilitation Serv.
_____
Defendant

Case Number: 6:04-cv-636-ORL-28JGG

COMPLAINT

1

# Complaint

1. The Plantiff is an SSDI recipient based on a well documented disability. She brings this action to prevent future overt, malicious and intentional discrimination to others that she has endured. The Orlando Division of Vocational Rehibilitation in November of 2003 mailed her an official letter excluding and denying her acces to VR services and resources in clear violation of her civil rights.

2. The Defendant, Florida Department of Education the Division of VR, has illegally discriminated because of her race and disability under the "color of law" by demanding she take a psychological evaluation administered by a known unlicensed health practictioner. Joyce A Wells (the known party) fraudulantly claimed licensure in the State of Florida while using another State's licensing number - putting **Psy. D.** behind her name with an out of State licence number following - in clear violation of Florida Department of Health regulations. The Plantiff notified VR of her findings. VR ignored that violation and rendered Joyce A. Wells' findings valid - denying Plaintiff access to VR services, when the law clearly states:
**"No qualified individual with a disability in the United States shall be...excluded, denied benefits or subjected to discrimination".**
The Plantiff asserts that had the Psychological Evaluation been administered by a Florida State licensed practioner and findings concluded to be the same, VR is still obligated under the law to help the Plaintiff.

3. The Orlando Division of VR intentionally discriminated against Plaintiff and denied her inclusion in the program. Rather than helping her, defendants chose to embrace breaking the law by supporting malpractice, fraud, discrimination and violation of State policy. Mrs. Judy Whitaker and Mr. David Givens deliberately and illegally denied Plaintiff access to State sponsered funds and services rendering her ineligible for VR services because Plaintiff's "disability is too severe for an employment outcome" - a crafted false finding to deny Plaintiff access to VR services.

4. The Plantiff seeks declaratory and injuctive relief to ensure that other disabled African-Americans are not further subjected to overt and hidden discrimination by the Orlando VR. In addition, the Plantiff seeks compensatory and punitive damages for humiliation, embarrassment, emotional and physical distress, and deprivation of her right to equal access opportunities.

# Parties

5. **Lisa Hamiltion** is a 33 year old songwriter who recently formed her own corporation, Lisa Hamiltion Music Publishing Inc. dba *Top Notch Hitz*. Her most recent project "American Bird" is at the center of this litigation. She is a former State of Florida Real Estate licensee, a high school graduate with college credits from Valencia Community College. She is a sufferer of anxiety disorder and is a survivor of childhood open heart surgery. She is currently in her ninth year of marriage and the mother of three children.

6. **The Florida Department of Education Division of Vocational Rehabilation** is a State entity which was formed to assist the qualified disabled to become self-sufficient in the employment arena, giving equal opportunity with the non-disabled.

7. **Joyce A. Wells** is an vendor for the State sponsored VR program providing psychological evaluations and learning disabilty assessment **(She was denied Florida State licensure in November of 2003).**

8. **Dr. Leonard Skizynski**, Psy. D. is the registered licensed vendor with VR who is the Supervisor for Mrs. Wells and is responsible for her actions **(He is not indicated as a Supervisor on her application to the State of Florida for licensure, which was denied).**

9. **David Givens**, is the immediate Supervisor for the Orlando VR counselors. He is responsible for ensuring applicants experience with VR is pleasant and handled fairly, in compliance with State and Federal laws.

10. **Mrs. Judy Whitaker**, is the Senior VR counselor for the Orlando division and is also the counselor assigned to Lisa Hamilton.

11. **David E. Bogert**, is a Florida licensed Mental Health Counselor and is the partner of two folded businesses with Joyce A. Wells. He helped administer the Psychological Evaluation/Learning Disability Assessment test for Lisa.

12. **Mrs. Judy Whitaker, Mr. David Givens, Mrs. Joyce A Wells, David E. Bogert and Dr Leonard Skizynski** are all being sued in their official and individual capacities.

# Venue

13. Venue is proper in that all claims alleged herein arose in Orange County, Florida.

# Facts

14. In August of 2003, Lisa Hamilton contacted the Florida Division of Vocational Rehabilitation Services. She inquired about assistance with starting her own business. She was instructed to attend orientation to find out more about their services. Lisa indeed met VR preliminary requirements being an SSDI recipient. Lisa was given an appointment with Judy Whitaker, one of their VR counselors. And in this meeting Lisa expressed her desire for help with furthering her company - **Lisa Hamilton Music Publishing Inc. dba Top Notch Hitz.** Lisa went into further detail about what she already had and what she lacked to accomplish self-sufficiency.

15. Mrs. Whitaker expressed in detail what Lisa was entitled to and she made it very clear to Lisa that helping her start a business is not something Lisa was entitled to nor are they obligated to do so. Lisa informed Mrs. Whitaker that she applied for a loan/grant (through Able Trust) which was denied so they referred her to VR taking into consideration her disability and intent to work. Mrs. Whitaker then admitted that in her many years of counseling with VR she has seen Lisa's request happen once and that it took a long time, *2 years,* and the financial support given was $25,000 for a special school for music production, called FULL SAIL. Lisa then stated, "If that is what it takes, I am willing to go the distance". Mrs. Whitaker reiterated again that it's not something they do. Mrs. Whitaker followed up with compliments to Lisa saying how bright and smart she was and teaching may be a better choice for her (taking away Lisa's right of choice).

16. After a long discussion about why VR could not help Lisa with her business aspirations, Mrs. Whitaker wrote up a list of things Lisa needed to find out before applying for financial aid and enrolling in school to pursue teaching. Yes, the decision was made for Lisa. VR was sending Lisa to school to become a teacher. Lisa was not happy with the way things were going, but she went along with the suggestion. Lisa followed up by going to Vallencia Community College and speaking with a guidance counselor concerning what it would take for her to enroll in the next session. Lisa informed Mrs. Whitaker of her progess but voiced her actual non-desire to go back to school to become a teacher and that teaching was not in her plans. Lisa again informed Mrs. Whitaker that she needed help with owning and operating a business and becoming self-sufficient. Mrs. Whitaker replied, "You would need to enroll at the UCF business course and once completed, and your business plan is approved by them, then and only then could they move forward to accomplish your goal".

17. Lisa called UCF to sign up for the next scheduled 6-week business course. Lisa was informed that VR would pay for her tuition and would take care of the neccesary paper work. Afterwards, Lisa would just need to show up for classes.

18. Lisa called Mrs. Whitaker and informed her she enrolled in the course and a demand for payment would be sent for her approval. Mrs. Whitaker was bothered by the fact Lisa made this arrangement and in a raised voice told Lisa she was supposed to enroll her. Lisa expressed her desire to move forward with the process but Mrs. Whitaker quickly and abruptly told her that she had to first see if Lisa was in fact **qualified** for VR services and that Lisa was not a client but an applicant. Lisa reminded Mrs. Whitaker that her being a SSDI recipient made her eligible under State requirements. Mrs. Whitaker voiced that she made that determination.

19. Lisa asked Mrs. Whitaker in this phone call what was the delay in finding her eligible. Mrs. Whitaker's response to Lisa was that she was not her only client and that she would need to set up an appointment with Lisa to come in and create a IPE plan. Mrs. Whitaker informed Lisa she would need to call her later to set up a time because her computer was down and she could not locate her schedule book.

20. Days, weeks . . . 3 weeks went by with no call from Mrs. Whitaker. Lisa finally called Mrs. Whitaker and Mrs. Whitaker brushed off Lisa again by telling Lisa that she would need to call her back.

21. Another week goes by with no phone call from Mrs. Whitaker. Lisa iniates another call to Mrs. Whitaker to set up a appointment. Lisa is now told by Mrs. Whitaker that she is becoming annoying. Lisa responded by saying she simply wanted to proceed with her plan. Again Mrs. Whitaker promises to call her back.

22. Another week goes by with no phone call from Mrs. Whitaker. This time when Lisa calls Mrs. Whitaker for an appointment she is yelled at by Mrs. Whitaker and told she is very aggressive. Lisa politely corrected her and informed her that she was persistent. Of course in this conversation no appointment is given to Lisa. Mrs. Whitaker avoids the appointment issue all together.

23. At this point Lisa feels Mrs. Whitaker is intentionally frustrating her to cause her to give up pursuit of access to VR services and resources. Lisa takes matters into her own hands and contacts the Ombudsman Office and spoke with Roy Cosgrove. Lisa informed Mr. Cosgrove of the lack of communication and the unfair treatment she was receiving from the Orlando VR Department.

24. Mr. Cosgrove assures Lisa he would look into her allegations. A few days later Mr. Cosgrove contacts Lisa as promised and informs her that he spoke with the VR department and that Mrs. Whitaker would be contacting her.

25. A week passes with no call from Mrs. Whitaker. Lisa informs Mr. Cosgrove and he ensures her he would look into the matter once more. Another week passes with no call from Mrs. Whitaker. Lisa contacts Mr. Cosgrove to inform him and he expresses his concern as to why they had not contacted Lisa. Lisa expresses her

belief to Mr. Cosgrove that the Orlando VR did not want to help her with starting a business, but would rather ignore her and hope she would go away. Mr. Cosgrove stated he would call the Orlando VR right now and for me to wait by the phone for their call.

26. Well what do you know. Lisa phone rings, and yes it's Judy Whitaker, making statements to Lisa like, "you are calling everyone! This can't possibly help your case! Something is wrong with you!". After what Lisa feels was a threat, Mrs. Whitaker schedules an appointment.

27. Lisa arrived to the appointment on time and was directed to Mrs. Whitaker's office. Mrs. Whitaker informed Lisa that they would be joined by her Supervisor, David Givens. Mr. Givens enters the room and the meeting began. Lisa starts off by expressing her desires to operate her own business and Mrs. Whitaker tells Lisa that the Orlando VR could not assist in this desire.

28. Mr. Givens' first statement in this meeting to Lisa was, "We don't give people money!". Lisa stated she was fully aware of this but that they could provide resources and services that could help her move forward in her goal to work for herself. Mr. Givens curtly replied, "We don't help people with starting a business!". At this moment Lisa shows them both a memo mailed to her from Tallahasse concening a circular that was sent out to every VR service provider **in the country**. Lisa also pointed out to them an issue passed by Congress concerning "Right of Choice" with starting a business "as a possible outcome" or option available to clients under the law. Lisa also pointed out examples given in the memo of services VR could provide, one being guaranteeing a loan as an available option to clients if their plan calls for this and they show strenghth in that area.

29. Mr. Givens asked Lisa if he could take a closer look at the memo and stated he never saw this information before. Mr. Givens asked to make a copy. Mr. Givens and Mrs. Whitaker stepped out of the office.

30. Mr Givens and Mrs. Whitaker returned to the office where Lisa was left waiting and stated they wanted a psychological done on Lisa. Lisa's response, "Why?....You have over 200 pages of my medical records and you have information on my current care under a *psychologist*. Mrs. Whitaker stated "That is not enough. We need more". Lisa said "More than 200 pages of pertinent information?". Mrs. Whitker stated, "What we need is not in those files". Lisa then expressed her concern to Mrs. Whitkaer and Mr. Givens that she felt this was a delay tatic.

31. Mr. Givens and Mrs. Whitaker responded to Lisa by saying, "You are very aggressive and forceful!". Lisa replied by saying "Aggressive is such a harsh and negative word. Lisa stated she would rather they say "tenacious" or "persistent" than the forementioned. Mrs. Whitaker told Lisa that she seemed to have a problem with authority and does not seem to understand when people say no. Lisa

stated that if she agreed to this "psychological evaluation" that it would need to be independent of VR. They both exclaimed there was a woman who was a licensed psychologist with her own practice and a vendor for VR. Lisa asked what was a vendor. Mrs. Whitaker replied, "Someone that is registerd as a provider of services who we are allowed to pay from the federal funds we receive". Lisa said, "My psychologist can administor the test". Mrs. Whitaker stated it was easier for them to use their vendor because of the payment issue and for my convenience the psychologist would meet me at the VR office instead of Lisa traveling to her Kissimmee office. Lisa informed them she would think about it taking into consideration all they have put her through. Lisa felt this was another way to delay services and discourage her.

32. Shortly after returing home, Lisa immediately contacted Mr. Cosgrove from the Ombudsman office as he requested her to inform him of the outcome of the meeting. Lisa asked, "Why do they need a psychological evaluation when they have documentation of my illness and disability status". Mr. Cosgrove assured Lisa this process was customary and **everyone** has to have one done to determine what is needed to help that person succeed. With Mr. Cosgrove's explanation and Mr. Given's and Mrs. Whitaker's seeming attempt to move forward, Lisa agreed to the psychological evaluation.

33. The evaluation was scheduled for October 9, 2003. Lisa arrived for the evaluation and was introduced to a Joyce A. Wells, the independent Psychologist whom Mrs. Whitaker and Mr. Givens asserted had her own practice and was a vendor for VR. Mrs. Wells and Lisa talked briefly. She informed Lisa that she was administering several tests at once and was very busy. She introduced Lisa to her associate David E. Bogert who asked Lisa vocabulary definitions and card associations and card matches. This proceeded for about an hour. Afterwards, Mrs. Wells came in and took Lisa back to a room with her and asked more questions relating to vocabulary and card matching. She also gave Lisa a writing test which took approximately 30 minutes. Mrs. Wells asserted that due to her time constraint and being overloaded with test assessments she scheduled Lisa for the second part of the test on October 14, 2003.

34. Lisa arrived to the October 14, 2003 appointment on time and was on her own doing the second part of the test (comprised entirely of math questions), for approximately 2 hours. This was the conclusion of the psychological evaluation.

35. One week passes Lisa receives no word on the psychological evaluation resuts. Two additional weeks pass with no call from Mrs. Whitaker. So Lisa iniates a call to Mrs. Whitaker to find out the status. Mrs. Whitaker tells her that she had not heard anything from the psychologist. Going into the fourth week with no phone call, Lisa called Mr. Cosgrove to inform him that she had not heard anything concerning her psychological evaluation results. Mr. Cosgrove expresses his concern as to why they are taking so long to get back with Lisa. Mr. Cosgrove tells Lisa to wait a few more days.

36. A few days later Lisa calls Mrs. Whitaker again and ask for her results. Mrs. Whitaker tells Lisa that she has 60 days to find Lisa eligible and not to rush her. Lisa replied the law gives 60 days, it does not mean you have to take the entire 60 days. Mrs. Whitaker states that Lisa is not her only client. Lisa replies, "If it takes you this long, I understand why you are behind". Mrs. Whitaker states, "I am not behind. I just haven't heard from the psychologist". At this point Lisa's trust in Mrs. Whitaker is gone and mutual respect is out the door.

37. As a result of this lack of communication, Lisa is becoming more and more concerned about what the results are going to state. Lisa calls Mr. Cosgrove to inform him of how she is feeling. Mr. Cosgrove states that VR can not deny Lisa services based on the psychological evaluation, that the evaluation helps create the plan and services VR will provide.

38. A few days later Lisa still has not heard anything. So she calls Mrs. Whitaker and is informed that Mr. Cosgrove called her and they spoke. Mrs. Whitaker stated that she told Mr. Cosgrove that she received the psychological evaluation results but had to send it back to Joyce A. Wells **because it was incomplete**. Lisa asked Mrs. Whitaker what was incomplete about it. Mrs. Whitaker stated the format in which the psychological evaluation was in was incorrect. Lisa became more and more concerned of the evaluation results because a **psychological evalution is an opinion based on the Psychologist's findings** and if a VR counselor is instructing the so called "vendor psychologist" how to format her findings, this could not be good. Lisa asked herself the questions: "**Is this the first psychological evaluation Joyce A. Wells performed for VR? What was the intent on sending Lisa to Joyce A. Wells to have the pscholgical evaluaion done if she did not even know how to format an evaluation?**". Lisa tried not to jump to any conclusions but common sense and intuition were telling Lisa that Mrs. Whitaker was incorporating her own opinions into the psychological evaluation which was why she rendered it **incomplete**.

39. Lisa called Mr. Cosgrove to confirm if he had in fact spoken to Mrs. Whitaker concerning the evaluation status. Mr. Cosgrove confirmed the conversation and expressed similar concerns as to what was incomplete about the evaluation.

40. A few days later, Mrs. Whitaker called informing Lisa that the psychological evaluation was in and when Lisa would like to come into the office to discuss the findings. Lisa said today. Mrs. Whitaker said not today, but tommorrow - November 19th, 2003.

41. Lisa arrived to Orlando VR on November 19th, 2003, 15 minutes early for the appointment. Lisa was left waiting in the reception area an entire hour after her scheduled appointment time. Lisa felt this was not looking good - yet another one of Mrs. Whitaker's waiting games. Finally, Mrs. Whitaker called Lisa into the boardroom. Mrs. Whitaker stated that her Supervisor Mr. Givens would once again

be joining them. When Mr. Givens arrived in the room, Mrs. Whitaker handed Lisa a 9 paged stapled, <u>unsigned</u> document labeled across the top "Learning Disability Assessment/Psychological Evaluation".

42. Mrs. Whitaker started the meeting out by stating, "Let's get the worst out of the way first". She then instructed Lisa to turn to Page 8 Summary Reccomendations and look at point #6 which stated, "Lisa would like assistance starting her own business in music and song writing. . .while she may have a talent in this area, her mental state is not stable enough to cope with the stress of owning and operating a small business at this time".

43. Lisa immediately felt the hurt of intentional discrimination and could not believe it - Mrs. Whitaker, Mr. Givens along with Mrs. Joyce A. Wells devised a plan to exclude Lisa from the VR program. Lisa was shocked to see "learning disability assessment" on the paper because she was not told or asked to take such a test yet one was administered - waisting federally sponsored funds. It was clear Lisa had no learning disability as Mrs. Whitaker suggested Lisa pursue Teaching credentials (Lisa wants to know who received payment from Orlando VR for this test - Joyce A. Wells as an "independent psychologist" together with her associate David E. Bogert for solely a learning assessment test or her Supervisor Dr. Leonard Skizynski - the registered Orlando VR vendor whom Joyce A. Wells works under).

44. Lisa feels this is a good example of the intentional, overt and malicious actions Orlando VR took to try and find something wrong with her and when they could not find that something they crafted fictional information with ill will toward Lisa causing irreversible psychological damage to her and her view of equal access to all in America. Lisa's concern is why would Orlando VR do these discriminatory actions so openly - leaving audit trails of their malicious and illegal behavior unless they have done it before and gotten away with it or this was the attitude of the two highest ranked individuals of this Orlando VR office - discrimination againts African-American Disabled applicants is accepted and allowed. **Lisa knew this information about her was not true**. Her being mentally unstable to the point she could not run her own business.

45. Lisa wanted a clearer picture so she asked, "What does this mean exactly? Does this mean Orlando VR would not help me with running my own business? Or must I go to school to be a teacher to receive your services?" Mrs. Whitaker replied, "See, you don't seem to undersatnd anything!". Lisa's response was, "Am I eligible for VR services?". Simutaneously, Mr. Givens and Mrs. Whitaker replied ambigiously. Mr. Givens stating "No!" while Mrs. Whitaker stating "Yes!". Lisa replied, "Which is it - Yes or No?". Mrs. Whitaker stated she and Mr.Givens would need to discuss it together in more detail. Mr. Givens at this point became emphatic, stating "You can start your own business just not with <u>our</u> money!". Lisa responded by stating it was not their money. Mr. Givens then stated, "Well we can't help you because you are

mentally unstable!", and excused himself from the meeting.

46. Mrs. Whitaker and Lisa remained in the room and Lisa asked Mrs. Whitaker whether she really believed the information in the report. Mrs. Whitaker replied affirmatively and went on to say Lisa suffers from histrionic personality disorder and could not deal with authority. Mrs. Whitaker then went on to say that Lisa's thought process was confused and the report indicated she had some type of anger problem and learning difficulty. Lisa was crying at this point, stating aloud that this was the wrong report. Lisa expressed her feelings to Mrs. Whitaker that she believed the "Psychologist" may have mixed up the test results with another individual. Mrs. Whitaker replied that the report was in fact Lisa's. Lisa felt heart broken this report had her on a **6th grade reading level**, **3rd grade writing level** and also stated she was aggressive, tense, hostile and dominant along with developing some paranoid mentation, emotional labiltity and had confusion in thought process. The report also stated Lisa is grandiose,**verbose** and quite histrionic and that Lisa's insight is limited and judgement and reasoning questionable and that she was unjustifiably optimistic with high achievement aspirations that likely out strip Lisa's actual abilities. **Mrs. Whitaker then took it upon herself to <u>retrieve a book from her office</u> and read a definition of a mental disorder she felt lisa had (the histrionic personality disorder).** Mrs. Whitaker also pointed out in the report that the "Psychologist" felt Lisa may have reached her peak stability and there is no hope of Lisa getting any better (slanderous).

47. After Mrs. Whitaker's interpretation of the "psychological evaluation", the meeting was adjourned and Lisa was still not given **legal** reason why she was not eligible. If VR truly believed Lisa needed all this help surely **VR should provide** Lisa with even more help in order to function in the employment world (entrepreneur or employee) so on the way out the door Lisa asked Mrs. Whitaker one final time since Lisa really had not received a concrete answer whether she was eligible **at all** to receive help from VR. Mrs. Whitaker yelled at the top of her lungs at Lisa,"Just get out! Leave now!", all while in the presence of her Supervisor Mr. Givens and at least 5 other Orlando VR employees (whom Lisa is still able to recognize). Lisa felt completely discriminated against, embarassed and humiliated in a State sponsored facility. No one said anything - not even her Supervisor Mr. Givens. They all stared at Lisa as she left the office crying in humiliation and disbelief of the manner in which she was treated throughout the entire process.

48. Lisa went into a deep depression and could focus on none of her wifely or motherly duties. She was distraught over the overt and malicious discrimination she was subjected to at Orlando VR. Lisa wanted to know more about her Psychological Evaluator so she took it upon herself to check the Psychologist's history of complaints with the Florida Department of Health.

49. Lisa was disturbed with her findings on Joyce A. Wells:
a. The license number under Joyce A. Wells name on Lisa's evaluation did not

exist in the State of Florida. In fact, this was a California license number (**intentional deception**). **One must hold valid licensure in the State of Florida and must be specifically trained to administer certain tests.**

b. The Florida Department of Health informed Lisa that Joyce A. Wells was denied licensure with the State of Florida in November 2003 because her education **did not meet or exceed** Florida requirement.

c. Dr. Leonard Skizynski was licensed in the State of Florida and in good standing but was not listed as a Supervisor for Mrs. Wells on her application for licensure in the State of Florida. His Supervisor status is irrelevant as far as Mrs. Wells being permitted to administer psychological evaluations in the State of Florida because Florida Department of Health regulations state Mrs. Wells must meet minimal education requirements to even work under a psychologist (i.e. direct physical supervision on the same property). Lisa has never met Dr. Leonard Skizynski in person nor is his name or license number on her evaluation.

50. A few days later Lisa received a letter in the mail from The Florida Department of Education Division of Vocational Rehabilitation stating they thoroughly reviewed and discussed her report and determined that she was **not eligible** for VR services because her **disability** is **too severe** at this time to result in an employment outcome.

51. Lisa became more depressed but yet more determined to get to the bottom of this. She investigated further by calling the California Board of Psychology and found out that Mrs. Wells is a licensed Pyschologist in the State of California in good standing and that Comprehensive Behavioral Health in Kissimmee, Florida is where she did her internship under Dr. Leonard Skizynski PSD.Y for her license to practice in California - **not Florida**.

52. Lisa also learned that Joyce A. Wells never resided or practised psychology in California (that State is one of a very few who do not require much for licensure to practice Psychology). It is Lisa's contention that Mrs. Joyce A. Wells sought licensure in California since it was easier to obtain while all along her true aspirations were to apply for Florida licensure as a California Psychologist with hopes of slipping through the cracks but was abruptly stopped when the Florida Department of Health learned her School of choice, Newport University, was not accredited in Florida - rendering her education substandard under Florida requirements. Joyce A. Wells' web based University - Newport University - was not accredited in Florida and if she did not know this, the Department of Education Division of VR should have.

53. It is Lisa's contention that Mrs. Judy Whitaker and Mr. David Givens did know Joyce A. Wells was not a Psychologist in the State of Florida but worked under employment of one - Dr. Leonard Skizynski (a VR vendor who employs Joyce A. Wells to administer learning assessment tests for VR). Mrs. Whitaker and Mr. Givens **intended** trickery to deny Lisa access to VR services was to add a psycholgical evaluation to the customary learning assessment tests Joyce A.

Wells is employed under Dr. Leonard Skizynski to administer. This again proves their **intentional** discrimination against Lisa - their required psychological evaluation of Lisa was a big **LIE** (conspiratorial fraud). This is why Mrs. Whitaker and Mr. Givens demanded Lisa use Joyce A. Wells for the psychological evaluation so they could "fix" the results - part of Lisa's proof they **acted with ill will, malicious and intentional behavior allowing punitive damages.**

54. Lisa is prepared to prove Mrs. Whitaker and Mr Givens **retaliated** against her after she showed them the memo Lisa received from Tallahasse detailing "right of choice" and "outcome" options which made Mrs. Whitaker and Mr. Givens look unprofessional and discriminatory toward Lisa and her request. If Orlando VR helped others with starting a business as a possible outcome (i.e. send others to the UCF business course), why not simply do the same for Lisa. Mrs. Whitaker and Mr. Givens chose instead to discriminate against Lisa and deny her access to VR services.

55. Lisa informed Mr. Cosgrove and his Supervisor of the alledged fraud and discrimination. They promised to look into the matter and would call Lisa back. Mr. Cosgrove called Lisa back the same day to inform her that Joyce A. Wells has a Supervisor whom she works under. Lisa stated, "Joyce A. Wells is writing PSY. D. on evaluations and putting California license numbers while performing Psychological evaluations in the State of Florida. How does having a Supervisor justify her actions". Mr. Cosgrove stated, "Well, that's what they told me". The conversation ended.

56. From that day on Lisa has not heard from anyone mentioned above so it is Lisa's contention that the Orlando VR supports this fraud and used this fraud to discriminate against Lisa and deny her services. Lisa feels she should have at least had a fair opportunity to access services that are available to non-African-American disabled people. The Orlando Division of VR violated her civil rights under 503 and 504 of the Rehabilitaion Act of 1973 as well as the Americans with Disability Act of 1992 under title II and Rehabilitation Act 29 U.S.C 701 and 794 et seq 1994.Civil Right Act of 1866 and1871and Civil Right Act of 1991 and violation of her 11th Amendment Right.

# REMEDIES

57. REQUIRE ORLANDO Division of VR to come in compliance with State and Federal laws pertaining to race and disability discrimination.

58. The Plantiff asks that a public apology be given to her and all African-American qualified individuals who were denied Orlando VR services in the State of Florida.

59. The plantiff requests that the Orlando VR financial and any other books that will help determine where and how funds are distrubuted in comparison with blacks

and other race groups be opened and made public.

60. The Plantiff asks that Mrs. Judy Whitaker and Mr. David Givens' employment with VR be terminated and that they be barred from holding any State or Government position for the remainder of their lives based on their total disregard of the law and intended criminal behavior as State employees in their practice of discrimination against Lisa.

61. Lisa seeks $1,000,000.00 in punitive damages for each count of a violation found under State and Federal Law for the malicious and **intentional** discrimination she endured to send a message to the world of VR and other State entities who receive State funding that they are not immune from a law suit if they discriminate againts a race of disabled indivuals. They will be able to learn from the Orlando Division of VR that they could lose their jobs, that they are not above the law, could lose financial funding and be publicly embarassed.

62. Lisa also seeks compensatory damages of $1,000,000.00 for pain and suffering for the intentional malicious behavoir that was allowed to go on in a State sponsored facility.

63. Lisa also asks Joyce A. Wells cease and desist from all test administering for VR nationwide or any other State or Government entity indefinitely and seeks $500,000.00 for her misrepresention of herself and slander of Lisa.

64. Lisa seeks $500,000.00 from Dr. Leonard Skizynski for failing as a Health practioner and a State Vendor for exposing Lisa to an unlicensed psychologist which equates to negligence. Once notified by Lisa of Mrs. Wells misrepresentation as a State of Florida psychologist, Dr. Skizynski's sole response was "She applied for licensure in the State of Florida". As her Supervisor he should be liable to all actions undertaken by Mrs. Wells.

65. Lisa asks that David E. Bogert be fined by the Florida Department of Health for his role in the fraudulant and slanderous evaluation and for Lisa's pain and suffering she seeks $250,000.00.

66. And any other remedies the Court finds just and equitable.

Lisa Hamilton
NAME

4470 Scenic Lake Drive
Street Address

Orlando         FL      32808
City            State   Zip Code

407-290-6145
Telephone Number