FILED

04 SEP 24 AM 11:11

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LISA HAMILTON

CASE NO. 6:04-V-636-ORL-28JG

Plaintiff

vs.

The Florida Department of Education/
Division of Vocational Rehabilitation,
Judy Whitaker,David Givens,Joyce A. Wells,
David Bogert and Dr. Leonard Skizynski

Defendants

**OBJECTION**

**TO MAGISTRATE'S ORDER**

**AND**

**RECOMMENDATION (DOCKET 54)**

]

On September,16 2004 @ 5:25 PM, prior to the scheduled September 17, 2004 1:30 PM Dismissal Hearing on Defendant's motion to dismiss Plaintiff's complaint, Magistrate Judge Glazebrook entered DOCKET(49) - abruptly canceling the Dismissal Hearing - not offering Plaint opportunity to timely object to Defendant's Dismissal motions or submit evidence in support of her claim. The fact that the Defendants were in Default made their motions on Dismissal **moot** - at least until the court ruled upon either to set aside entry of Default or grant Plaintiff's motion for Default Judgment. When Magistrate Judge Glazebrook set

aside the Defendants Default and denied the Plaintiff's motion for Default Judgment, Magistrate Judge Glazebrook **left the Plaintiff without a voice** by submitting his Report and Recommendation without giving the Plaintiff a chance to contribute to his fact finding mission which violated the Plaintiff's 14th Amendment Right to Due Process. When Magistrate Judge Glazebrook submitted his Report and Recommendation Docket(54) without holding a Hearing to allow the Plaintiff the opportunity to defend her Claim against the Defendants - Magistrate Judge Glazebrook committed reversable error. In the Magistrate's Report and Recommendation he comes to the conclusions:

1.) The Plaintiff's amended complaint fails to state a claim upon which relief can be granted

2.) The Plaintiff fails to allege facts showing diversity of citizenship and asserts state-law claims of fraud, slander, negligence, and malpractice

3.) The Plaintiff's amended complaint fails to comply with the pleading requirements of Fed.R.Civ.P. 8 (a)(1)-(2)

4.) The Plaintiff's amended complaint fails to allege specific facts that establish a prima facia case of discrimination on the basis of race or disability.

5.) The Plaintiff's claims against Defendants Whitaker and Givens in their official capacities is barred by the U. S. Constitution, Eleventh Amendment.

6.) The Plaintiff's amended complaint fails to allege that Plaintiff has exhausted her administrative remedies prior to commencing this action.

**LEGAL ARGUMENT**

**1) The Plaintiff's 42 U.S.C 1983 AMENDED COMPLAINT DOES state a claim upon which relief can be granted.**

The Plaintiff's 42 U.S.C 1983 claim against The Florida Department of Education, its two Employees and three Contract Vendors, the burden of proof lies in proving by the preponderance of the evidence that: 1.) the act or omissions of the Defendants were intentional; 2.) that the Defendants acted under the color of law; 3.) the acts or omissions of the Defendants were the direct cause of the deprivation of the Plaintiff's rights that are protected by the Constitution or laws of the United States. When a person acts or purports to act in the performance of official duties under any State, County,or Municipal Law, Ordinance or Regulation the person is said to have "acted under the color of law". The Florida Department of Education/Vocational rehabilitation is a State entity and the actions of their two Employees and three Contract Vendors actions happened while in performance of their official duties. The administering of Psychological Evaluations and Learning Disability assessments by the three Contract Vendors through contractual agreement with the State entity Florida Department of Education/Department of Vocational Rehabilitation proves they were working under the authority of the State entity and at the behest of State Employees with Supervisory status.Without a doubt the Defendants were each "acting under the color of law" and without a doubt The Florida Department of Education is liable as the overseer. The Plaintiff having proven doctrine of "acting under the color.of law" proceeds to show and establish The Defendants acts or omissions were the direct cause of the Plaintiff's deprivation of her Constitutional rights. The Plaintiff was discriminated against by the Florida Department of Education/Vocational Rehabilitation when the contracted vendors Joyce A. Wells and David E. Bogert performed an illegal Psychological Evaluation on the Plaintiff - **being hand selected by Defendants Judy Whitaker and David Givens**. Defendant Dr. Leonard Skizynski having not met the patient confirmed the erroneous conclusions of Joyce A. Wells as an absent Supervisor. The law clearly defines Supervisory status as on the same property and meeting the client

and of course lets not forget the most important thing - the subordinate, Joyce A. Wells should possess at a minimum a degree from a regionally accredited School. The Defendant Joyce A. Wells does not meet one requirement to administer a legal Psychological Evaluation in the State of Florida yet she has a vendor contract with the Florida Department of Education. The Psychological Evaluation was administered by the Defendants Joyce A. Wells and David E. Bogert **on the property** of the Orlando Vocational Rehabilitation Services's building. Dr. Leonard Skizynski was not present nor has he ever met the Plaintiff to justify legally confirming this evaluation - thus proving Malpractice. Joyce A. Wells is not Licensed in Florida or anywhere for that matter that would validate her practicing Psychology without the proper licensure in the State of Florida. The Florida Department of Education harbored these two unlicensed practitioners using their Evaluation results to discriminate against the Plaintiff and violate her civil rights - **Plaintiff's denial of Vocational Rehabilitation services is based solely on this specific Psychological Evaluation.**

The fact that The Florida Department of Education did not send the Plaintiff to Dr. Leonard Skizynski - a Florida licensed Psychologist - or any other Florida Licensed Psychologist shows the intent of the State Employees Judy Whitaker and David Givens. The Plaintiff's claim is deprivation of her Civil Rights by State Actors and the relief that can be granted is holding The Florida Department of Education Liable for their Employees - Judy Whitaker and David Givens and three Contract Vendors - Joyce A. Wells, David Bogert and Leonard Skizynski whom all were acting "under the color of law".

Exemplifying this point, Plaintiff's best case to address this issue is West v. Atkins, 487 U.S. 42 (1988). In this case a State prisoner claiming serious mistreatment by a Doctor, brought a 42 U.S.C Section 1983 suit against the Doctor, asserting a claim

of cruel and unusual punishment. Assuming deliberate indifference, the Doctor would clearly have been liable to suit if he had been a full-time State Employee (See Estelle v. Gamble,1976). The Supreme Court in West v. Atkins said that the result was the same even though the doctor furnished the medical services to prisoners on a part-time basis and was technically an independent contractor with the State rather than a State employee.  The Supreme Court's analysis did not rely directly on the public function doctrine. The decision emphasized both that the Plaintiff was literally a prisoner of the State (and therefore a captive to whatever doctor the state provided) and that the State had an affirmative Constitutional obligation to provide adequate medical care to its prisoners, a duty the doctor was fulfilling for the State. The U.S. Supreme Court ruled that Liability fell onto the State for the Doctor - a Contract Vendor for the State. The West Doctrine states that the independent acts by a private entity may comprise State action - if with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is "entwined" with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government. (See Brentwood Academy. v. Tennessee Secondary School Athletic Association). Plaintiff points out cases in which the State actor (e.g., The Florida Department of Education) has a responsibility for other State actors (e.g., The Florida Department of Education Vendor Contractors). Although respondeat superior doctrine does not apply in these cases, the Supreme Court has carved out a narrower rule under which inaction--namely, a **failure to supervise** adequately - may result in Liability for the Constitutional violations committed by State actor subordinates. (See City of Canton v. Harris, 489 U.S. 378, 386-89 (1989); Monell v. Dep't of Soc. Servs). There is no dispute as to the material facts of The Florida Department of Education's Liability.

The Plaintiff has stated in her Complaint one or more good causes of action upon which relief can be granted therefore the Defendants motion to Dismiss should be denied as a matter of law.

## LEGAL ARGUMENT

**2.) Magistrate Judge Glazebrook states the Plaintiff's amended complaint fails to allege facts showing diversity of citizenship and instead asserts state-law claims of fraud, slander, negligence, and malpractice.**

The Plaintiff does not know what Magistrate Judge Glazebrrok is alleging by diversity of citizenship but if he is referring to the Federal Court's jurisdiction to hear the Plaintiff's case the Magistrate Judge has failed to recognize that deprivation of Plaintiff's Civil Rights are guaranteed by the Constitution of the United States of America and the Federal courts are the original authority to hear and grant the Plaintiff's relief. The State law claims that are involved are grand-fathered in at the courts discretion but it is also important to note that the The Florida Department of Education receives Federal Funding and is subject to Federal Jurisdiction in the acceptance of these funds. The Florida Department of Education is obligated not to discriminate in the disbursement of Federal Funds so diversity of citizenship does not apply here.

## LEGAL ARGUMENT

**3.) Magistrate Judge Glazebrook states Plaintiff's amended complaint fails to comply with Fed. c. r. p 8 (a) 1-2.**

Magistrate Judge Glazebrook's recommendation of dismissal of the Plaintiff's Complaint for failure to state a claim is improper (See Chance v. Armstrong) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief." (See Conley v. Gibson). In deciding whether a Complaint states a claim, a "court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the Plaintiff's favor.(See Hernandez v. Coughlin). The fundamental issue at the Dismissal stage "is not whether a Plaintiff is likely to prevail ultimately, but whether the claimant is afforded an opportunity to offer evidence to support Plaintiff's claims". Your Honor we both know Magistrate Judge Glazebrook did not afford Plaintiff an opportunity to offer evidence to support the Plaintiff's claim but instead Magistrate Judge Glazebrook canceled both opportunities Plaintiff had to provide evidence. Even if the Magistrate Judge felt by appearance on the face of the pleading that recovery was remote - his gut feeling was not the standard of review - the standard of review is affording Plaintiff an opportunity to submit evidence of her claim.

Despite the pressures to weed out apparently merit-less cases at the earliest point Courts Must take care lest "judicial haste in dismissing a complaint in the long run makes waste." (Dioguardi v. Durning). In no way is the Plaintiff's case without merit-less or frivolous but how would Magistrate Judge Glazebrook know this if the Plaintiff never had a chance to submit evidence? Yet Magistrate Judge Glazebrook made a recommendation to Dismiss the Plaintiff's Complaint with facts from one side which is contrary to Justice . The U.S. Supreme Court has recently had occasion to remind the courts that a Complaint adequately states a claim when it contains a short and plain statement of the claim showing that the pleader is entitled to relief: "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim," which "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Thus a complaint is sufficient if it gives "'fair notice of what the Plaintiff's claim is and the

grounds upon which it rests. It is clear that the Defendants and the Magistrate Judge Glazebrook are aware of the Plaintiff's claims against the Defendants as they all state Plaintiff's claims so eloquently in their rebuttals which are Discrimination of race, Discrimination of disability, violation of numerous civil rights, fraud, slander, negligence, deliberately indifferent, and malpractice. Yes the Plaintiff could have made the Complaint shorter and more direct but the Defendants know what the Plaintiff is suing them for (the Plaintiff is a pro se). Whether the Plaintiff can produce evidence to create a genuine issue with regard to her allegation is to be resolved through a motion for summary judgment not the dismissal of a Civil Rights Complaint.

**LEGAL ARGUMENT**

**4.) Magistrate Judge Glazebrook states that the Plaintiff's amended complaint fails to allege specific facts that establish a prima facia case of discrimination on the basis of race or disability.**

Assurance of Equal Educational opportunity rests upon legal foundations established by Federal Law, specifically the Rehabilitation Act of 1973 including Section 504, and the Americans with Disabilities Act of 1990. By federal law, a person with a disability is any person who: 1) has a physical or mental impairment; 2) has a record of such impairment; 3) is regarded as having such an impairment which substantially limits one or more major life activities such as self-care, walking, seeing, hearing, speaking, breathing, or learning.

The Plaintiff has established her disability through the Federal Government and it is well **established** and **Documented**. Every student with a documented disability has the following rights:

1) Equal access to courses, programs, services, jobs, activities, and facilities

available through the college or university.

2. Reasonable and appropriate accommodations, academic adjustments, and/or auxiliary aids determined on a case-by-case basis.

3. Appropriate confidentiality of all information pertaining to his/her disability with he choice of whom to disclose their disability to except as required by law.

4. Information reasonably available in accessible formats.

There is no dispute of fact that the Plaintiff is disabled and receives SSDI - that is the one thing everyone agrees upon in this case. To establish a prima facia case for discrimination one must be one of a special class whom the benefit was created specifically for. The elements for establishing Discrimination based on Disability under 504 of the **Rehabilitation act of 1973** \and the **Americans with Disability Act** are essentially the same and the Plaintiff's amended Complaint stated specifically those requirements by:

1.) Stating that the Plaintiff was disabled and an <u>SSDI recipient</u>.

2.) Being a SSDI recipient <u>made</u> the Plaintiff qualified for participation in the Vocational Rehabilitation program.

3.)The Plaintiff was still excluded from participation in the Vocational Rehabilitation program, denied the benefits of the Vocational Rehabilitation program, and was subjected to discrimination by its two Employees and three of its Contract Vendors solely because of the Plaintiff's disability.

4.) The Defendant, The Florida Department of Education, receives Federal funding.

The Plaintiff's amended Complaint **established a prima facia case of racial Discrimination** under Title VII of the Civil Rights Act of 1964 by:

1.) Stating the Plaintiff is an African-American (a protected class)

2.) Stating the Plaintiff's SSDI status made her qualified for Vocational Rehabilitation training and services for which the program exists  - to help the Disabled get on par with the non-Disabled.

3.) Stating the Plaintiff received a denial letter from the Florida Department of Education/Division of Vocational Rehabilitation which stated the Plaintiff did not qualify for VR services because her disability was too severe (a finding **based solely** from an **erroneous** and **illegal** Psychological Evaluation)

4.) Stating Defendant Judy Whitaker informed the Plaintiff that The Florida Department of Education/Division of Vocational Rehabilitation helped other clients with starting a business through the University of Central Florida's Small Business Course and when the Plaintiff asked for this same assistance, Defendant told Plaintiff no.

## LEGAL ARGUMENT

**5.) MAGISTRATE JUDGE Glazebrook states the Plaintiff's claims against Defendants Whitaker and Givens in their official capacities is barred by the U. S. Constitution, Eleventh Amendment.**

A State may waive 11th Amendment immunity by entering into a settlement agreement in which it unequivocally agrees to subject itself to Federal Court Jurisdiction. Defendant, The Florida Department of Education has waived its immunity in two instances:

1.)  by accepting Federal Funds conditioned on such a waiver. See §§ 2(a)(iii)(2)(b) and c)(iii)(2) .Some courts have held that the 11th Amendment does not bar a damage claim against a State or its Agencies, even in the absence of a waiver of immunity,

2) By Voluntarily purchasing Liability Insurance (Risk Management) Financial Services for its employees.

A State waives its 11th Amendment immunity from § 504 claims by accepting federal funds. Plaintiff brings suit under § 504.

Many Courts have held that damages under Title II and § 504 are only recoverable for intentional discrimination. (Bowers v. National Collegiate Athletic Association). The Plaintiff's amended Complaint makes such assertions that the Defendants in fact intentionally discriminated against the Plaintiff with ill will toward her and a total disregard to the harm it would cause the Plaintiff.

The limits on sovereign immunity include:

(1) The "good faith" of the States, that they will not refuse to honor "obligations imposed by the Constitution and by Federal Statutes that comport with the Constitutional design".

**(2) Claims for which the States have consented to suit. The Defendants have waived their right to 11th Amendment immunity by accepting Federal funding**.

(3) Claims against States by other States or the Federal Government.

**(3) Suits in which immunity is abrogated pursuant to Congress' 14th Amendment authority:**

(a) Suits against local government entities.

(b) Ex parte Young claims.

**(c) Individual capacity claims against State officials. The Plaintiff is suing Defendants in their individual and official capacities.**

(d) **Situations in which States manipulate their immunity in a systematic fashion to discriminate against Federal causes of action (intentional violations of laws). The Defendants have to know that they were violating established laws of the Constitution of the United States of America.**

Federal Courts may have Jurisdiction to properly require State officials to obey State law if Federal regulations make compliance with the State law a federal duty. The 11th

Amendment does not bar suit against State officials in their individual capacities, even if arising from their official acts (Hafer v. Melo ) unless the claim will "run to the State Treasury" under State law (Reyes v. Sazan). With the existence of State's Liability Insurance Trust Fund (Risk management) the State voluntarily establishes protection for its Employees against personal liability for damages,so Judy Whitaker and David Givens and The Florida Department of Education have waived their rights to 11th Amendment immunity. It does not matter whether the individual capacity suit is to enforce Federal or State law.(Sutta v. Acalanes) Officers sued in their individual capacity for violations of State law can be liable for monetary damages but the cause of action must allow for individual liability.

Whitaker and Givens can be sued in their official and individual capacities. The Supreme Court now insists that Congress can override States' immunity from suit only when it follows a new set of rules. On May 17, 2004, the Supreme Court ruled in **Tennessee v. Lane**, that Congress validly exercised its power under the Fourteenth Amendment to abrogate States' sovereign immunity in suits brought under Title II of the Americans with Disabilities Act involving access to courts. While the Supreme Court limited its holding to cases involving access to courts, its expansive analysis documents the history of state-sponsored discrimination against people with disabilities in many different areas and contains broad statements about the careful tailoring of Title II's requirements generally.

The Supreme Court then granted certiorari to decide whether and under what circumstances Title II validly abrogates States sovereign immunity of Title II.

The Supreme Court began its analysis by discussing the large body of

evidence that Congress amassed,  through legislative hearings and the creation

of a special task force gathering evidence from each State, before enacting the

ADA. The Court noted that Congress' conclusions based on that record are set

forth in hearing transcripts, committee reports, the task force report, and the

preamble to the ADA – including the finding that individuals with disabilities have

been subjected to a history of purposeful unequal treatment and relegated to a

position of political powerlessness in our society, 42 U.S.C. § 12101(a)(7).

   The Court held that Congress unequivocally expressed its intent to abrogate

sovereign immunity in the ADA, 42 U.S.C. §12202, and thus the only question

was whether it had the authority to do so. The U.S. Supreme Court reaffirmed its

prior rulings that Congress can abrogate States' sovereign immunity using its

power under Section 5 of the Fourteenth Amendment to enforce the substantive

guarantees of that Amendment, and that Congress' Section 5 power includes

"the authority both to remedy and deter violation of the Fourteenth Amendment

rights. . . by prohibiting a somewhat broader swath of conduct, including that

which is not itself forbidden by the Amendment's text." The Court added that

Section 5 authorizes Congress "to enact prophylactic legislation proscribing

practices that are discriminatory in effect, if not in intent, to carry out the

basic objectives of the Equal Protection Clause."

   A State shall not be immune under the Eleventh Amendment of the

Constitution of the United States from suit in Federal court for a violation of Title

IX of the Education Amendments of 1972 or the provisions of any other

Federal statute prohibiting discrimination by recipients of Federal financial

assistance.

**LEGAL ARGUMENT**

**6.) Magistrate Judge Glazebrook states that the Plaintiff's amended complaint fails to allege the Plaintiff has exhausted her administrative remedies prior to commencing this action.**

Title II procedures do not require a plaintiff to exhaust administrative remedies, so there is no procedural bar to the Plaintiff's claim under Title II of the ADA. Section 202 of Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity. Under title II, persons who believe that they have been subjected to discrimination by public entities are permitted, though not required, to file administrative complaints.

It would be anomalous to interpret the ADA such that an employee of a public entity had to exhaust administrative remedies under the ADA, but could proceed directly to litigation under section 504 for the same claim. The legislative history of the ADA establishes that Congress did not intend to require exhaustion where none had been required before under section 504, and so Title II did not include an exhaustion requirement which is consistent with section 504 it is not Congress' intent that persons with disabilities need to exhaust administrative remedies before exercising their private right of action.

This paradox is exemplified in the following two, but similar instances, both of which concern violations of an individual's constitutionally protected Civil Rights. In the first instance, exhaustion of administrative remedies is not required when private citizens bring suits against **State officers under section 1983 of Title 42 of the United States Code.** The 1983 statute affords individuals the right to bring suit if they believe their Civil Rights have been violated. However, in the second instance, when prisoners make similar allegations against prison officials,

Congress requires that prisoners exhaust all administrative grievance remedies "as are available", before such prisoners bring suit against prison officials in Federal Courts. Recognizing the paramount role Congress has assigned to the Federal courts to protect constitutional rights - an action under 1983 is free of exhaustion requirements.

The U.S. Supreme Court holds that exhaustion of State administrative remedies was not required in cases brought under Sec. 1983. The Federal Government was clearly established as a guarantor of the basic Federal rights of individuals against incursions by State power. As they recognized in Mitchum v. Foster the very purpose of 1983 was to interpose the Federal courts between the States and the people, as guardians of the people's Federal rights – to protect the people from unconstitutional action under color of State law, whether that action be executive, legislative, or judicial. Congress assigned to the Federal courts a paramount role in protecting constitutional rights. Based on the legislative history of 1983, it was concluded that exhaustion of State administrative remedies should not be required as a prerequisite to bringing an action pursuant to 1983 (Patsy v. Board of Regents).

The Plaintiff asks that the defendant's motions to dismiss be denied and an affirmative answer given to the Plaintiff's Complaint and Discovery should commence. The standard of review here is a de novo review as motion for dismissal is a Dispositive motion. **See Supporting Evidence Exhibits:**

(A) Joyce A. Wells DENIED Florida Psychological Licensure status.

(B) Exclusion and Denial Letter from the Florida Department of Education.

(C) The Signature of Dr. Leonard Skizynski being served Plaintiff's Application for Default at the same address as Defendants Joyce A. Wells and David Bogert.

(C-2) Copy of the U.S. Marshall's report of Complaint Served on Skizynski again at the same address as Joyce A. Wells and David Bogert.

(C-3) An E-mail from the California Psychology Board confirming Leonard Skizynski's Supervisory role to Joyce A. Wells which he denied and perjured himself on.

**I certify that copies have been served on all parties involved as well as Magistrate Judge Glazebrook and Presiding Judge John Antoon II this day September 24, 2004.**

**Sincerely,**

**Lisa Hamilton**

authority to approve an appropriate supervisor. The list of potential supervisors must be submitted within one week from the entry of the Final Order. The supervisor and Dr. Wax must meet weekly face-to-face and the supervisor must review all of Dr. Wax's client records since the last meeting. The supervisor is to report any concerns of unethical behavior at once and must submit a written report prior to the April 2004 meeting.

The meeting adjourned at 10:54 a.m. and reconvened at 11:08 p.m.

Exhibit A.

**PROSECUTOR'S REPORT**

**Tab 3 Richard Shoop, Prosecuting Attorney**

Mr. Shoop presented a prosecutor's report outlining the current status of the 20 discipline cases.

**ADMINISTRATIVE PROCEEDINGS**

**HEARING NOT INVOLVING DISPUTED ISSUES OF MATERIAL FACT**

**Tab 4 Charles Aronovitch – (endorsement of other state license) Connecticut 2002**

Ms. Mary Ellen Clark introduced the case to the board. Dr. Aronovitch was present and sworn in by the court reporter. Dr. Aronovitch was not represented by counsel.

Dr. Aronovitch's application was reviewed at the May 23, 2003 meeting and was denied because the law under which Dr. Aronovitch was licensed was not substantially equivalent to Florida law. Following discussion, the board took the following action.

Dr. Richard Hoffman moved to rescind the denial. Ms. Cheryl Levine seconded the motion, which carried 4/1. Dr. Herbert Goldstein opposed.

**To summarize,** Dr. Aronovitch's initial denial was rescinded and he has been approved for licensure pending passage of the laws and rules examination.

**PETITION FOR A HEARING INVOLVING DISPUTED ISSUES OF MATERIAL FACT**

**Tab 5 Joyce Wells – (endorsement of other state license) California 2002**

Ms. Mary Ellen Clark introduced the case to the board.

Dr. Wells' application was reviewed at the November 14, 2003 meeting and was denied because the law under which Dr. Wells was licensed was not substantially equivalent to Florida Law.

The board received a Request for Continuance on January 27, 2004.

Dr. Herbert Goldstein moved to grant a continuance until the April 2004 meeting. Ms. Cheryl Levine seconded the motion, which carried 5/0.

Ms. Mary Ellen Clark provided guidance to the board regarding the application method endorsement of other state license. Ms. Clark described three methods the board could use to determine eligibility for licensure.

Exibit A

Exhibit B

# FLORIDA DEPARTMENT OF EDUCATION

Exhibit B.

STATE BOARD OF EDUCATION

F. PHILIP HANDY, *Chairman*
T. WILLARD FAIR, *Vice Chairman*
*Members*
SALLY BRADSHAW
LINDA J. EADS, ED.D.
CHARLES PATRICK GARCÍA
JULIA L. JOHNSON
WILLIAM L. PROCTOR, PH.D.

JIM HORNE
Commissioner of Education

Just Read,
Florida!

11/25/2003

Lisa Hamilton
4470 Scenic Lake Dr
Orlando, Florida 32808

Dear Ms Hamilton:

At our last meeting we thoroughly reviewed and discussed your evaluation reports. It has been determined that you are not eligible for vocational rehabilitation services becauseyour disability is too severe at this time for rehabilitation services to result in an employment outcome. This decision was reached 19 November 2003 and confirmed on 25 November 2003.

I believe the following agency could be of assistance to you. Please contact them at your convenience.

Lakeside Alternatives
434 W Kennedy Blvd
Orlando, Florida 32810

If you disagree with this decision you have the right to appeal it within twenty-one (21) days after you receive this letter by requesting <u>in writing</u> either:

- An Administrative Review by the Area Director by sending your request to:

James Shalls
3555 Maguire Blvd., Ste 205
Orlando, Fl 32803

LORETTA COSTIN
*Director, Division of Vocational Rehabilitation*

3191 Maguire Blvd., Ste. 246, 506 • Orlando, Fl 32803 • (407) 897-2710

Toll Free: 1-800-451-4327 (Voice or TTY) • In Tallahassee: 850-245-3399 (Voice or TTY) • FAX: 850-245-3392
Florida Relay Service: 1-800-955-8771 (TTY) • 1-800-955-8770 (Voice) • www.fldoe.org

DOE/VR-VCMT027 (Rev. 03/03)





Osceola County Tax Collector
Patsy Heffner

## Search By Business Name...

Page 1 of 1

*Click on a record below to view more details.*

**Searches**
- Account Number
- **Business Name**
- Owner Name
- Occupation

**Site Functions**
- Welcome
- Tax Search
- **Occupational Lic.**
- Tax Certificates
- Online Help
- Feedback
- Home

Searc

**8001-0040881 COMPREHENSIVE BEHAVIORAL HEALTH SERVICES**

| Address | Occupation |
|---|---|
| BOGERT DAVID E<br>03359 W VINE ST 104<br>KISSIMMEE 34741 | MISCELLANEOUS PROFESSIONAL |

Exhibit C1

*Search performed on 5/13/2004 2:19:05 PM*
*with Business Name = COMPREHENSIVE BEHAVI*
*and Sort list by = Business Name*
*and Show list using = DETAIL*

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Leonard Skizynski
3359 W. Vine Street St 104
Kissimmee, FL 34741

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Leonard J. Skizynski ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery 6-28-04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number (*Transfer from service label*) 7004 0750 0000 7107 3760

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540

EXHIBIT

U.S. Department of Justice
United States Marshals Service

**PROCESS RECEIPT AND RETURN**
*See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form.*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| DEFENDANT | TYPE OF PROCESS |

**SERVE** NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

**AT** ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

| | |
|---|---|
| Number of process to be served with this Form - 285 | |
| Number of parties to be served in this case | |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):*

Fold Fold

Exhibit C2

| Signature of Attorney or other Originator requesting service on behalf of: | ☐ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|---|

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. *(Sign only first USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☑ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. | |
|---|---|---|
| Address *(complete only if different than shown above)* | Date of Service | Time am pm |
| | Signature of U.S. Marshal or Deputy | |

| Service Fee | Total Mileage Charges *(including endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS:

**NOTE**

**PRIOR EDITIONS MAY BE USED**

**3. NOTICE OF SERVICE**

**FORM USM-285 (Rev. 12/15/80)**



Exhibit C3

Relationships are based on trust.
And an amazing interest rate.
CITI® PLATINUM SELECT® CARD

Exhibit C3

LisaHam7

# Mail

Inbox: Message | Sent | Trash | Draft | Folders... | Preferences | Help | Sign Out

Get Mail | Write Mail | Address Book | Reply | Reply All | Forward | Keep As New | Delete | Move Message To...

**Subject:** Joyce Wells, Psy.D.
**Date:** 6/25/2004 2:04:07 PM Eastern Daylight Time
**From:** Tammey_Bailey@dca.ca.gov
**To:** lisaham7@netscape.net

« Previous | Next »

Dear Ms. Hamilton:

Joyce A. Wells Psy.D. was conferred a doctorate degree in psychology by Newport University, a California approved school, on 12/11/1992.

She submitted the following post-doctoral hours:
01/04/1993 to 12/10/1993 at Mental Health Services of Osceola County, Inc. under the supervision of Leonard J. Skizyndki, Psy.D.

Dr. Wells was issued California psychology license number PSY 18387 on 06/24/2002. Her license will expire unless renewed on 10/31/2005.

Sincerely,

Tammey L. Bailey
Office Technician
California Board of Psychology
916-263-2699 ext. 0

« Previous | Next »

Get Mail | Write Mail | Address Book | Reply | Reply All | Forward | Keep As New | Delete | Move Message To...